UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| **JERRY HILL, SUSAN MYERS, and JEFF DAVIS,**<br><br>　　　　Plaintiffs,<br><br>v.<br><br>**CITY OF AKRON,**<br>**DAN HORRIGAN, in his official capacity as Mayor of Akron, and**<br>**JAMES NICE, in his official capacity as Chief of Police,**<br><br>　　　　Defendants. | Civil Action No.: |

## COMPLAINT

1. The City of Akron has enacted Akron Ordinance 135.10, entitled "Unlawful panhandling and fraudulent solicitation," ("Anti-Panhandling Ordinance") which restricts the rights of Plaintiffs to express themselves and their needs to others. Plaintiffs ask this Court to provide them redress from this ordinance that unconstitutionally criminalizes and limits their speech on the basis of its content.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to Article III of the Constitution of the United States and 28 U.S.C. §§ 1331 and 1343(3) and (4). The relief sought is authorized by the Constitution of the United States, 42 U.S.C. § 1983, and other law.

3. This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). The actions giving rise to this suit took place in this judicial district. Defendant City of Akron is located within this judicial district, and Defendants Mayor Horrigan and Chief Nice, sued in their official capacity, work in this judicial district as well.

## PARTIES

**Plaintiff Jerry Hill**

4. Plaintiff Jerry Hill has been soliciting immediate donations in the City of Akron for years. He obtained a panhandler registration from the Akron City Police, and has renewed it several times.

5. Mr. Hill hates soliciting donations on the street, but he does it to raise funds to try to support himself and his 18-year-old son, who has a disability.

6. Mr. Hill is unable to work due to a medical condition that causes his hands and body to shake. He has applied for social security disability but has not been approved.

7. Mr. Hill is homeless. He has a temporary living arrangement that could end at any time.

8. Mr. Hill tries to secure resources by holding a sign directed towards passing cars that says:

> "GOD Bless. MATT 5:42 Luke 10:31. Listen to your Heart. NEED Compassion! PLEASE HELP MY FAMILY. Waiting on SSI claim for Parkinsons disease. Don't Drink Lost our Place. NEED Help with Getting an apartment. Food for my family. Staying with friends and family, now (parents)"

9.       Mr. Hill often makes eye contact with passing drivers.  He also will speak with passersby about his needs.

10.     The Anti-Panhandling Ordinance prevents him from raising funds in many places throughout the City.  Moreover, the Anti-Panhandling Ordinance prevents him from trying to raise funds after dark.

11.     Mr. Hill has been told more than once by officers of the Akron Police Department that he is not allowed to hold his sign.  He has also been told by police officers that he and his sign are a "stain on society," make the neighborhood "ugly," and that he should "get a fucking job."

12.     Mr. Hill feels that Akron's Anti-Panhandling law and its requirement that he wear a badge stigmatizes and demeans him and his speech.  Being treated with such disdain simply because he is trying to help his family makes him depressed and upset.

**Plaintiff Susan Myers**

13.     Plaintiff Susan Myers has panhandled in the City of Akron for 6 years.  She registered as a panhandler years ago.

14.     Ms. Myers goes to a corner in the City of Akron and holds up a sign that reads "Could you help please God Bless Thank You."  When she arrives at the corner, she cleans up the litter that has accumulated.  She holds up her sign, smiling and waving at passing drivers.

15.     Ms. Myers will also sometimes verbally ask a passerby for a donation.

16.     While she is holding her sign, Ms. Myers sometimes is approached by a police officer who demands to see her panhandling license and tells her if she continues to try to raise money on the intersection she will be arrested.

17. Ms. Myers panhandles in order to raise funds to survive.

**Plaintiff Jeff Davis**

18. Plaintiff Jeff Davis is a registered panhandler who currently sleeps at a homeless shelter in Akron. He solicits donations in and near downtown Akron for the purpose of raising money to buy a bus ticket back to his hometown in Iowa.

19. Mr. Davis solicits money primarily by holding a cardboard sign that reads: "This is Humiliateing But I need help for Bus Fair trying to go home Fort Dodge, Iowa Please Help." (errors in original). Mr. Davis also verbally solicits donations from individuals as they pass.

20. When Mr. Davis first began soliciting donations in Akron, he was told that he was required to register with the police first.

21. The restrictions in Akron's Anti-Panhandling Ordinance make it difficult for Mr. Davis to reach his intended audience. Mr. Davis is not able to talk about his needs on many of the sidewalks in Akron because of the Anti-Panhandling Ordinance. If the Anti-Panhandling Ordinance did not exist, Mr. Davis would be able to tell more people about his needs.

22. Mr. Davis does not enjoy panhandling, but it is necessary for him to communicate with others to raise money for his bus ticket home to Iowa.

**Defendants**

23. **Defendant City of Akron** (the "City") is a municipal corporation located in Summit County, Ohio.

24. **Defendant Dan Horrigan** is the Mayor of the City of Akron, Ohio. As Mayor, Horrigan is the executive head of the City of Akron.

25.  **Defendant James Nice** is the Chief of the City of Akron Police Department. As the Chief of Police, Nice oversees the activities of the City of Akron Police Department.

## FACTS

**Akron's Anti-Panhandling Ordinance**

26.  Akron has regulated charitable solicitation (also known as panhandling) since 1994. These restrictions are codified at section 135.10 of Akron's codified ordinances.

27.  In 2006, Akron City Council substantially amended Section 135.10 to its current form.

28.  The Anti-Panhandling Ordinance imposes restrictions on speech that asks for an immediate donation of money.

29.  Under the Ordinance, individuals who want to request an immediate donation of money are required to first register with the Akron Police Department, disclose their identification, and be photographed and fingerprinted. Individuals who have been convicted of two or more panhandling offenses in the past two years are ineligible to be registered. Akron Ord. 135.10(F).

30.  It is impractical for spontaneous panhandlers to travel to the downtown police station and pre-register before engaging in constitutionally-protected speech. Moreover, the registration requirement prevents anonymous speech, and deters individuals who are wary of talking with the police or sharing their identity.

31.  Individuals covered by the Ordinance are required to wear a badge visibly while they are speaking. Akron Ord. 135.10(F).

32.  The Ordinance also prohibits any speech requesting an immediate donation of money before sunrise and after sunset on both public and private property. During winter

months, this restriction requires panhandlers to cease their expressive activities as early as 5:00 pm.

33. The Ordinance further prohibits charitable solicitation in numerous places in the city, including at any bus stop; towards any vehicle; near the Akron Civic Theater, Canal Park Stadium, or Akron Art Museum; in Akron's Lock 3 Park; or near any school or church. Akron Ord. 135.10(C).

34. These restrictions were crafted with the intent--and have the effect--of keeping those requesting an immediate donation of money from reaching much of their intended audience.

35. The Ordinance also prescribes the manner in which speakers may communicate their needs in public. Akron Ord. 135.10(D) & (E).

36. None of these restrictions are carefully tailored to further a compelling government interest. When the Ordinance was enacted, there was no probative evidence before the City Council that any of these restrictions were needed to further a legitimate interest of government.

37. Instead, the vast majority of the testimony offered to the Akron City Council was based on the goal of accommodating select members of the public who preferred not to hear this particular form of constitutionally-protected speech.

38. Upon information and belief, the Anti-Panhandling Ordinance is only enforced against individuals who are perceived to be poor or homeless, and not against other individuals who solicit funds, for example, in connection with nonprofit corporations.

39. Upon information and belief, governmental and quasi-governmental units in Akron (including the Akron City Police, the University of Akron, and the Downtown Akron

Partnership) exploit the Anti-Panhandling Ordinance, citing it to demand that poor individuals leave public areas, even when the individual is not violating the Ordinance at all.

40. The Anti-Panhandling Ordinance further stigmatizes and demeans the homeless and very poor in Akron.

## CAUSES OF ACTION

### COUNT ONE
### Constitutional and Civil Rights Pursuant to 42 U.S.C. § 1983
### Violation of First Amendment and Ohio Constitution
(Against all Defendants)

41. Speech that communicates a need, asks for help, and/or requests charity is fully protected free speech under the United States and Ohio Constitutions.

42. A law is a presumptively unconstitutional content-based restriction on speech if *either* (1) the *text* of the law makes distinctions based on speech's "subject matter . . . function or purpose" *or* (2) the *purpose* behind the law is driven by an objection to the content of a message. *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015). Akron's Ordinance 135.10 is a presumptively unconstitutional content-based restriction under either of these alternative tests.

43. By drawing distinctions based on the subject matter, function, or purpose of speech, Akron Ordinance 135.10 is a content-based restriction on speech that is presumptively unconstitutional.

44. In addition, because the purpose of the law was driven by a dislike for the content of panhandling speech, Akron Ordinance 135.10's restrictions are presumptively unconstitutional.

45. As a content-based restriction on free speech, Akron Ordinance 135.10 is unconstitutional unless the Defendants can prove that it meets the demands of strict scrutiny, namely, that it is narrowly tailored to further a compelling state interest.

46. Akron Ordinance 135.10 is not narrowly tailored, nor does it substantially further a compelling state interest.

47. Akron Ordinance 135.10 has harmed and continues to harm Plaintiffs by interfering with their ability to freely communicate their needs to the Akron community.

48. The unconstitutional restrictions and requirements of Akron Ordinance 135.10 have injured Plaintiffs, making them entitled to relief under the federal and state constitutions and 42 U.S.C. § 1983.

49. The unconstitutional restrictions and requirements of Akron Ordinance 135.10 has caused and will continue to cause irreparable harm to the rights of the Plaintiffs and others similarly situated.

## **PRAYER FOR RELIEF**

Plaintiffs request that this Court enter judgment against Defendants City of Akron, Mayor Horrigan, and Chief Nice providing the following relief:

A. Damages in whatever amount the individual Plaintiffs are found to be entitled;

B. Injunctive Relief and Declaratory Relief;

C. An award of interest, costs, and reasonable attorney's fees; and

D. Such other and further relief as the Court deems appropriate.

May 3, 2016                                             Respectfully submitted,

*/s/ Joseph Mead*
Joseph Mead (0091903)
2121 Euclid Ave., UR 317
Cleveland OH 44115
Phone: 216-307-5322
j.mead@csuohio.edu

Freda Levenson (0045916)
Elizabeth Bonham (0093733)
ACLU of Ohio
4506 Chester Ave.
Cleveland, OH   44103
Phone: 216-472-2220
Fax: 216-472-2210
flevenson@acluohio.org
ebonham@acluohio.edu

Doron M. Kalir (0088894)
Cleveland-Marshall College of Law
Civil Litigation Clinic
2121 Euclid Ave., LB 138
Cleveland, OH 44115
Phone: 216.687.3948
d.kalir@csuohio.edu

*Attorneys for Plaintiffs*